FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 08, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PATRICK MARTIN LEE, a single person,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>RYAN POTTER and JANE DOE POTTER, husband and wife; CITY OF ELLENSBURG, by and through the Ellensburg Police Department; and ELLENSBURG POLICE DEPARTMENT,<br><br>　　　　　Defendants. | NO: 1:18-CV-3093-RMP<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment, ECF No. 10. A hearing was held on this matter on November 13, 2019, in Spokane, Washington. The Court has considered the record, the briefing, the arguments of counsel, and is fully informed.

/ / /

/ / /

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

Plaintiff Patrick Lee was arrested for public urination in Ellensburg, Washington on May 21, 2016. *See* ECF No. 1-1 at 6. The facts that give rise to his claims stem from the manner in which he was arrested. At approximately 1:25 a.m., Mr. Lee walked into an alley in downtown Ellensburg. ECF No. 22-2 at 7. Officers Ryan Potter and Clayton Self observed him walk into the alley and followed him. ECF No. 12 at 3–5. According to Officer Potter, public urination is a common problem in Ellensburg, and he followed Mr. Lee because he believed Mr. Lee was entering the alley to urinate. *Id*.

Officer Potter states that he saw Mr. Lee urinating in the alley, and that he arrested Mr. Lee for doing so. *See id*. at 5, 7. Mr. Lee was convicted of public urination for his actions that night. ECF No. 14-1. However, he still maintains that he was not urinating in the alley, and instead entered the alley to use a portable toilet located there. ECF No. 22-2 at 10.

The details of Mr. Lee's arrest also are disputed. Officer Potter presents the following account. At the time Officer Potter saw Mr. Lee, he was on foot patrol in downtown Ellensburg with his partner, Officer Self. ECF No. 12 at 3. He watched Mr. Lee, who was wearing a jacket and a hood, exit a bar called the Blue Rock Saloon. *Id*. When Mr. Lee entered the alley, Officer Potter and Officer Self followed him, and Officer Potter identified himself as law enforcement. *Id*. at 5. Mr. Lee did not acknowledge their presence and remained facing away from them.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2

*Id*. Officer Potter states that he could not see Mr. Lee's face due to his hood and the direction that Mr. Lee was facing. *Id*. Officer Potter, allegedly concerned by Mr. Lee's behavior, motioned for Officer Self to come closer, while he attempted to move to get a better look at Mr. Lee's face. *Id*. at 6. When Officer Potter moved, he shined his flashlight in Mr. Lee's face, and Mr. Lee ran away from the officers. *Id*.

Officer Potter claims that he yelled for Mr. Lee to stop, but Mr. Lee continued to run from them. *Id*. Officer Potter again yelled that Mr. Lee was not free to leave, but Mr. Lee continued to flee. *Id*. Officer Potter then followed Mr. Lee, grabbing Mr. Lee from behind. *Id*. Officer Potter put his right arm around Mr. Lee's shoulder and his left hand on the front of Mr. Lee's jacket. *Id*. The two fell to the ground. *Id*. According to Officer Potter, they fell because Mr. Lee was wearing cowboy boots and could not get traction on the wet surface of the alley. *Id*. He denies using any type of tactical move to take Mr. Lee to the ground. *Id*. at 7.

Officer Potter claims that as he attempted to handcuff Mr. Lee, Mr. Lee allegedly laid there, allowing his body to be dead weight, and refused to move his hands so that Officer Potter could handcuff him easily. *Id*. Officer Potter maintains that, during the entire arrest, Mr. Lee's eyes were open, and he was conscious; he simply would not respond to the officers, or assist them. *Id*. at 7–8. Officer Potter states that Mr. Lee "did not technically resist handcuffing," but that

he did not cooperate either. *Id*. at 7. After handcuffing him, the officers dragged Mr. Lee to the side of the alley to prop him up against the wall. *Id*. at 8. There, they read him his Miranda rights. *Id*. Mr. Lee still did not respond to the officers. *Id*.

Officer Potter states that he believed Mr. Lee was intoxicated due to his nonresponsive behavior and the "strong odor of intoxicants" coming from him. *Id*. Officer Potter called an ambulance for Mr. Lee and continued to attempt to speak with him. *Id*. As Officer Potter talked to Mr. Lee, he noticed blood coming from Mr. Lee's eyebrow and noticed that Mr. Lee had black pebbles from the alley pressed into his face. *Id*. at 8–9. According to Officer Potter, after the ambulance arrived, Mr. Lee began "talking a lot" and "rambled on about unrelated topics." *Id*. at 9.

Mr. Lee's account of the arrest differs from the officer's account. He states that he had not been drinking that day, prior to the arrest. ECF No. 22-2 at 7–8. According to Mr. Lee, he went into the alley to use a portable toilet located there. *Id*. at 9, 10. Although Mr. Lee contests that he did not urinate in public, Mr. Lee was found guilty in Lower Kittitas County District Court for "Disorderly Conduct – Urinating in Public" for his actions on May 21, 2016. ECF No. 14-1.

While in the alley, Mr. Lee heard an "aggressive" voice begin speaking to him. ECF No. 22-2 at 10. He cannot remember what the voice said and did not see the speaker's face. *Id*. Mr. Lee denies running from the officers. *Id*. at 12. He

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

also denies that the officers identified themselves and told him that he was not free to leave. *Id*. Mr. Lee states that Officer Potter immediately tackled him to the ground, even though he was not attempting to flee. *Id*. at 13. "[I]t was very fast. . . . Very odd how it—why they chose to do that." *Id*. Mr. Lee states that he experienced a "flash of blood from getting [his] head bounced off the ground." *Id*. at 14. Mr. Lee admits that he was wearing cowboy boots when he was arrested in the alley, but maintains that Officer Potter tackled him purposefully to bring him to the ground. *Id*. at 12–13.

Mr. Lee filed a Complaint in Kittitas County Superior Court on May 17, 2018, against Defendants Officer Potter, the City of Ellensburg, and the Ellensburg Police Department. ECF No. 1-1 at 4. Mr. Lee claims that all Defendants are liable under 42 U.S.C. § 1983 ("Section 1983") for violating his Fourth Amendment right to be free of unreasonable searches and seizures, and his Fourteenth Amendment right to due process. *Id*. at 10. He explains that the City and Police Department are liable under Section 1983 because the alleged constitutional violations were proximately caused by their policies. *Id*. at 10–11.

Mr. Lee also alleges that all Defendants are liable under Washington law for intentional infliction of emotional distress, the tort of outrage, and negligent infliction of emotional distress. *Id*. Additionally, he brings claims of false arrest and false imprisonment. *Id*. at 11. Finally, he claims that the City of Ellensburg

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

and the Ellensburg Police Department negligently trained and supervised Officer Potter, thereby causing his injuries. *Id*.

On June 4, 2018, this case was removed from Kittitas County to the Eastern District of Washington. ECF No. 1. Defendants moved for summary judgment on all of Mr. Lee's claims. *See* ECF No. 10. Mr. Lee has submitted little evidence in support of his claims. The only evidence that Mr. Lee has put on the record is a portion of his own deposition and a portion of the criminal proceedings against him for public urination in Kittitas County. *See* ECF No. 22-2 at 1–2 (identifying exhibits).

**LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A key purpose of summary judgment is to isolate and dispose of factually unsupported claims . . . . *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is not a disfavored procedural shortcut, but is instead the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See *Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring a jury or judge to resolve the parties' differing versions of the truth at trial. *T.W. Elec. Service, Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). "If the nonmoving party cannot muster sufficient evidence" to establish the essential elements of its claim in response to the motion for summary judgment, then "a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 331.

At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). Furthermore, the court will not presume missing facts, and non-specific facts in affidavits are not sufficient to

support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

## DISCUSSION

### I. Mr. Lee's Constitutional Claims

Mr. Lee brings his constitutional challenges against Defendants through 42 U.S.C. § 1983. "Traditionally, the requirements for relief under [§] 1983 have been articulated as (1) a violation of rights protected by the Constitution or created by a federal statute, (2) proximately caused (3) by the conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947, F.2d 1418, 1420 (9th Cir. 1991).

#### A. Section 1983: Fourteenth Amendment Due Process Claim

Mr. Lee alleges that his arrest violated the Fourteenth Amendment due process clause, which prevents the deprivation of liberty without due process of law. ECF No. 1-1 at 10; *see* U.S. Const. amend. XIV. However, the United States Supreme Court has explained that lower courts should analyze excessive force claims under the Fourth Amendment, not the due process clause of the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ."). Indeed, claims of excessive force during an arrest "are properly analyzed under the Fourth Amendment's 'objective reasonableness'

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

standard, rather than under a substantive due process standard." *Id*. at 388. Therefore, the Court rejects Mr. Lee's Section 1983 claim premised on a violation of his Fourteenth Amendment Due Process rights.

**B. Section 1983: Fourth Amendment Claim**

Mr. Lee asserts that Officer Potter violated his Fourth Amendment right to be free of unreasonable seizures by arresting him. ECF No. 1-1 at 10. However, Mr. Lee was convicted in state court for urinating in public, the same conduct for which Officer Potter arrested him. Based on the record, no reasonable juror could find that Officer Potter's arrest of Mr. Lee, without more, violated Mr. Lee's right to be free of unreasonable seizures.

Mr. Lee also alleges that Officer Potter violated his Fourth Amendment rights by using excessive force during the arrest, making the seizure unreasonable. *Id*. at 9–10. The United States Supreme Court has explained "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). Whether the force used to effectuate an arrest violates the Fourth Amendment depends on whether the force was objectively reasonable at the time of the arrest. *Id*. While what is "reasonable" depends on the specific facts and circumstances surrounding the arrest, the test remains an objective one. *Id*. Neither the officer's good

intentions, nor his bad motives, factor into a determination of reasonableness with respect to an excessive force claim. *Id*.

To assess the reasonableness of the force used, courts should consider: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect actively resists detention or attempts to escape." *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Ninth Circuit repeatedly has explained that "summary judgment . . . in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). Usually, whether an officer used excessive force is a question of fact for the jury. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (citing *Liston*, 120 F.3d at 976 n.10). "This is because such cases almost always turn on a jury's credibility determinations." *Id*. at 701.

This case is no different. The evidence before the Court primarily consists of Mr. Lee and Officer Potter's vastly different accounts of Mr. Lee's arrest. Mr. Lee argues that he was tackled suddenly, without warning, and he adamantly denies attempting to flee the officers. Mr. Lee states that he was tackled with force that caused him to lose consciousness when he hit the ground. On the other hand, Officer Potter claims that he merely reached out to grab Mr. Lee as Mr. Lee attempted to evade arrest, and both parties slipped and fell.

While public urination is not a dangerous or serious crime, the parties dispute the amount of force used on Mr. Lee and the circumstances under which it was applied. If a jury finds that Mr. Lee's account is more believable than Officer Potter's account, it could reasonably conclude that Officer Potter used excessive force. A reasonable jury could find that, based on Mr. Lee's account, he was not committing a dangerous crime, he was not attempting to evade arrest, and that he posed no danger to the officers or to others. *See Liston*, 120 F.3d at 976. Because a reasonable jury could conclude that Officer Potter used excessive force, Mr. Lee's Section 1983 claim premised on the Fourth Amendment does not fail as a matter of law, and Defendants are not entitled to summary judgment on that basis.

### *Qualified Immunity*

Officer Potter, who was sued in his individual capacity, also has raised the affirmative defense of qualified immunity in response to Mr. Lee's Fourth Amendment claim, and seeks summary judgment on that defense. Government officials are entitled to qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The purpose of qualified immunity is to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

The Supreme Court has laid out a two-part test for resolving qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236. First, the court must decide whether the defendant's conduct violated a constitutional right. *Id.* at 201. During this analysis, the court must assess the facts in the light most favorable to the party asserting the injury. *Id.*; *see also Scott v. Harris*, 550 U.S. 372, 377 (2007); *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). The court must define the constitutional right with particularity rather than simply naming the constitutional amendment or provision from which the right stems. *See Camarillo v. McCarthy*, 98 F.2d 638, 640 (9th Cir. 1993).

Second, the court must determine whether the identified constitutional right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. The plaintiff "bears the initial burden of proving that the rights allegedly violated . . . were clearly established at the time of the alleged misconduct." *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992). "Whether the law was clearly established is an objective standard; the defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). When deciding if the right was clearly established, the court need not identify an identical prior action. *See Anderson*, 483 U.S. at 640. The court should look to binding precedent first. *Chappel v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2003). If no binding precedent is on point, then the court

should consider all relevant precedents, including cases from other circuits, federal district courts, and state courts. *Id.*; *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

While the Court need not identify an identical prior action, the precedent upon which it relies must discuss specific rights rather than general constitutional principles. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). The Supreme Court has instructed, "'[C]learly established law' should not be defined 'at a high level of generality.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). As the Supreme Court repeatedly has stressed, "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate." *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019) (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). Here, the Court cannot rely solely on general principles governing Fourth Amendment reasonableness when deciding whether qualified immunity applies. *Id.* The Court first analyzes whether a constitutional violation occurred. Mr. Lee claims that Officer Potter violated his Fourth Amendment rights by tackling him to the ground during an arrest in which Mr. Lee did not attempt to flee the officers and was not committing a serious crime. For the purposes of deciding qualified immunity, the Court must take the facts in the light most favorable to the party asserting the constitutional injury. *Inouye*, 504 F.3d at 712; *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 4064 (9th Cir. 2013) ("For purposes of qualified immunity, we resolve all factual disputes in favor of the party asserting the injury."). Therefore, the Court

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

assumes for the purpose of this qualified immunity analysis that Mr. Lee did not attempt to evade arrest. As explained *supra*, if a jury finds Mr. Lee to be more credible than Officer Potter, it could reasonably conclude that Officer Potter's actions constituted excessive force. Therefore, for the purposes of this qualified immunity analysis, the Court assumes that Officer Potter's actions violated Mr. Lee's Fourth Amendment rights.

Next, the Court must analyze whether Mr. Lee's alleged Fourth Amendment right is clearly established. Although Mr. Lee bears the burden of demonstrating that a clearly established right was violated in this matter, he has pointed to no precedent, and the Court is not aware of any precedent, that forbids an officer from taking an arrestee to the ground under circumstances sufficiently similar to those alleged here. While the Court has identified some cases that discuss the tackling of arrestees by police officers, tackling was found to be excessive force only when combined with other harmful actions, like purposefully slamming the arrestee's head into the ground, or when multiple officers tackled one, passive suspect. *See e.g.*, *Meredith v. Erath*, 342 F.3d 1057, 1060–61 (9th Cir. 2003); *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) (finding that officers' use of gang tackle tactic, where multiple officers tackled a responsive, passive suspect, was excessive force).

At the hearing, Mr. Lee's counsel argued that Officer Potter's actions violated the Fourth Amendment's reasonableness requirement generally, maintaining that it

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

is manifestly unreasonable to tackle a person who is not evading arrest and who has not committed a dangerous crime. In his briefing, Plaintiff cited to the case *Deorle v. Rutherford*, arguing that, in light of the circumstances presented, Officer Potter's use of force was unreasonable. 272 F.3d 1272, 1279–80 (9th Cir. 2001). In *Deorle*, the court found that the officer used excessive force and was not entitled to qualified immunity. However, that case involved a police officer shooting an unarmed man with a cloth-cased round, without providing any warning. *Id*. While Mr. Lee need not cite to an identical case to demonstrate excessive force, he must cite to some law or case that would have put Officer Potter on notice that his actions violated the Fourth Amendment. *White*, 137 S. Ct. at 552 (quoting *Anderson*, 483 U.S. at 640) ("[I]n light of pre-existing law the unlawfulness [of the officer's actions] must be apparent."). He has failed to do so here.

Therefore, the Court finds that Mr. Lee has failed to meet his burden to show that the alleged right was clearly established, and Plaintiff's rejects Mr. Lee's generalized argument regarding reasonableness to overcome Officer Potter's claim of qualified immunity.

### C. *Monell* Claims Against the City and Police Department

In his Complaint, Mr. Lee alleges that the City of Ellensburg and the Ellensburg Police Department are liable for Officer Potter's alleged constitutional violations under Section 1983. Plaintiffs may sue municipalities for constitutional violations under Section 1983; however, it is "only when execution of a

government's policy or custom inflicts the injury that the municipality as an entity is responsible. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

In his response to Defendants' Motion for Summary Judgment, Mr. Lee conceded his *Monell* claim against the City. ECF No. 22 at 7. Therefore, Mr. Lee's Section 1983 claim against the City of Ellensburg is dismissed with prejudice.

The Ellensburg Police Department argues that it is not a proper party to this action and that the Court must dismiss all claims against it. Generally, police departments are not entities that may be sued under Section 1983. *Dean v. Barber, 951 F.2d 1210*, 1214 (11th Cir. 1992). However, if a police department is a separate entity from the municipality in which it is located, it may be sued under Section 1983. *See Streit v. City of L.A.*, 236 F.3d 552, 565–66 (9th Cir. 2001); *see also Vermillion v. Lacey Police Dept.*, CASE NO. 3:17-cv-05514-RJB, 2017 WL 5009696. To decide if a police department is a separate entity, the court must rely on state law. *See id.*; Fed. R. Civ. P. 17(b). Mr. Lee has not directed the Court to any state law suggesting that the Ellensburg Police Department is separate from the City of Ellensburg such that it may be sued separately from the municipality under Section 1983. However, the Court need not address this issue because the claims against the Ellensburg Police Department fail as a matter of law. Mr. Lee has submitted no evidence related to the Ellensburg Police Department whatsoever to support his *Monell* claim against it. Therefore, the Court also dismisses Mr. Lee's

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

Section 1983 claim against the Ellensburg Police Department with prejudice. *See Celotex Corp.*, 477 U.S. at 331.

### II. Mr. Lee's State Law Claims

A district court may assert supplemental jurisdiction over claims that "form part of the same case or controversy" over which a district court has original jurisdiction. 28 U.S.C. § 1367(a). However, if a district court dismisses all claims over which it has original jurisdiction, the court "may decline to exercise supplemental jurisdiction" over the remaining claims. 28 U.S.C. § 1367(c)(3). If all original jurisdiction claims are dismissed before trial, it is common practice to decline to exercise jurisdiction over any remaining state law claims. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (Usually, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

The Court had original jurisdiction over Mr. Lee's Section 1983 claims under federal question jurisdiction. *See* 28 U.S.C. § 1331. However, now that the Court has granted summary judgment in favor of Defendants on those federal claims, there is no remaining basis for federal question jurisdiction. Furthermore, Plaintiff has not alleged a basis for the Court to assert diversity jurisdiction over the remaining state law claims. Because the Court dismissed the claims over which it had an independent basis for subject matter jurisdiction, and because it did so early in the

litigation, the Court declines to exercise supplemental jurisdiction over Mr. Lee's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Acri*, 114 F.3d at 1001.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED IN PART**.
2. Plaintiff's federal claims are dismissed **with prejudice**.
3. Plaintiff's state law claims are **DISMISSED without prejudice**.
4. Judgment shall be entered for all Defendants on all federal claims.
5. Any remaining, pending motions in this matter are **DENIED AS MOOT**, and any hearing dates are hereby **STRICKEN**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close this case**.

**DATED** January 8, 2020.

                          *s/ Rosanna Malouf Peterson*
                        ROSANNA MALOUF PETERSON
                           United States District Judge